IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **ANTHONY PARKER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:20-cv-01033 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| **MARQUE OF BRANDS AMERICAS,** ) | MAGISTRATE JUDGE NEWBERN |
| **LLC,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Anthony Parker, a Tennessee resident, filed a pro se employment discrimination Complaint against Marque Brands of Americas, LLC ("Marque"). (Doc. No. 1). He also submitted an application to proceed as a pauper. (Doc. No. 2). This matter is before the Court for a ruling on the application and initial review of the Complaint.

### I. APPLICATION TO PROCEED AS A PAUPER

The Court may authorize a person to file a civil suit without paying the filing fee. 28 U.S.C. § 1915(a). Plaintiff, a 62-year single man, receives a modest monthly unemployment payment that is exceeded by basic expenses, and he reports no significant assets. (Doc. No. 2). It therefore appears that Plaintiff cannot presently pay the full civil filing fee in advance without undue hardship. Accordingly, the application will be granted.

### II. INITIAL REVIEW

The Court must conduct an initial review of the Complaint and dismiss any action filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov.

15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

## A. Standard of Review

In reviewing the Complaint, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether those factual allegations "plausibly suggest an entitlement to relief," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true "unwarranted factual inferences," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th

2

Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").

**B. Factual Background**

Plaintiff is a 62-year-old African-American man. (Doc. No. 1). Liberally construed, the Complaint alleges that Marque CFO Steve Gordin hired Plaintiff as second shift supervisor in May 2020. (*Id*. at 2). Plaintiff was the only black person over 40 to hold a management position at Marque. (*Id*. at 5). He reported to owner Kirstie Kirkham, a white woman under the age of 40. (*Id*.) Ed Gottlied, a white man who also held the title second shift supervisor, began training Plaintiff. (*Id*. at 3). Gottlied mentioned a problem with a black couple on the production floor the week before Plaintiff was hired that had resulted in a termination. (*Id*. at 2-3).

When Plaintiff began work in May 2020, Kirkham demanded that Plaintiff text her every night when locking the building. (*Id*. at 3). Neither Gottlied nor Plaintiff's predecessor had to report in this way. (*Id*.) Kirkham demonstrated a "smug attitude" and assigned first shift supervisor Bryant, who had less experience, to mentor Plaintiff. (*Id*.) Also in May 2020, a white non-management employee named Christina "behave[d] as she [wa]s [Plaintiff's] boss," was confrontational with Plaintiff, told Plaintiff he should watch how he talked to Kirkham and others, was insubordinate, did not follow directions, and demanded that Plaintiff do what she wanted. (*Id*.) Christina also demanded that Plaintiff include her in management emails, angering the CFO. (*Id*. at 4). In June 2020, Christina continued being confrontational and accused Plaintiff of talking behind her back on the production floor. (*Id*.) She was "derogatory, prejudicial, and insinuate[d] she had authority over" Plaintiff. (*Id*.)

In June 2020, someone – Plaintiff suspects Kirkham – denied Plaintiff access to the label machine printer. (*Id*.) That same month, a white employee named Kristopher Hilliard "made a

3

threatening gesture by slamming his hand on the tabletop" during a work discussion. (*Id*.) Plaintiff informed CFO Gordin, but he "gave no advice." (*Id*.) Several weeks later, white male employee Dustin Warner called Plaintiff a "boy," then said he was "joking." (*Id*.) Plaintiff informed CFO Gordin the next day. (*Id*.) According to Plaintiff, "other incidents" occurred with Dustin, but Plaintiff did not report them to Defendants. (*Id*.)

On July 10, 2020, Brandon Anderson, a white male, became the new Plant Manager and placed Plaintiff "under surveillance" in a "discriminatory practice to fabricate company policy violations." (*Id*. at 4-5). On July 14, Anderson and Gordin terminated Plaintiff 30 days before a raise was due, giving the reason "terminated while on probation." (*Id*. at 5). Plaintiff was replaced with a white male under 40 years of age. (*Id*.) Plaintiff believes that he was discriminated against because he is a 62-year-old black man. (*Id*.)

**C. Discussion**

1. Federal Law Claims

The Complaint reflects that Plaintiff intends to bring federal employment law claims against Marque.[1] Liberally construing the Complaint, Plaintiff brings (1) discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") related to termination of employment and harassment, and (2) a discrimination claim under the Age Discrimination in Employment Act of 1967 ("ADEA") concerning termination of employment. (Doc. No. 1 at 5-7).

---

[1] A plaintiff must file a civil lawsuit within 90 days of receiving the right-to-sue notice from the EEOC demonstrating the exhaustion of administrative remedies. *See Fuller v. Mich. Dep't of Transp.*, 580 F. App'x 416, 424 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-5(f)(1)) (discussing the 90-day requirement in the context of Title VII). Plaintiff has satisfied the administrative exhaustion requirement by submitting the right-to-sue notice that he received from the EEOC dated October 22, 2020. (Doc. No. 1-2). The Court received the Complaint on December 1, 2020. (Doc. No. 1). Accordingly, the Court considers Plaintiff's claims to be timely.

### a. Substantive Legal Standards

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). To state a Title VII discrimination claim, Plaintiff must plausibly allege that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) he was treated differently from similarly situated individuals outside of his protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004) (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).

Discrimination under Title VII includes maintaining a hostile work environment, which exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). For such a claim, Plaintiff must plausibly allege that: (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action. *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (citing *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078-79 (6th Cir. 1999)).

The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). For an

5

Case 3:20-cv-01033 Document 5 Filed 12/11/20 Page 5 of 10 PageID #: 33

ADEA discrimination claim, Plaintiff must plausibly allege that (1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). However, an ADEA plaintiff may not rely on "recitations of the[se] elements" without specific factual allegations. *Smith v. Wrigley Mfg. Co. LLC*, 749 F. App'x 446, 448 (6th Cir. 2018). Rather, a plaintiff must allege "facts regarding the names, relative ages, or qualifications" of the younger employees who allegedly assumed his job duties," or "provide examples of how those employees were treated more favorably." *Id*. (collecting cases).

      b. <u>Analysis</u>

Construing the Complaint most liberally, as is required, the Court finds that Plaintiff has stated a colorable Title VII discrimination claim sufficient to withstand initial review. The Complaint alleges that Plaintiff is an African-American man; Plaintiff was competent and experienced; white superiors singled out and subjected Plaintiff to unfair employment conditions not applied to other white employees; and those superiors eventually terminated Plaintiff and replaced him with a white employee. At this stage of the case, the Complaint contains enough factual matter to put Marque on notice of Plaintiff's Title VII discrimination claim. While questions exist regarding whether Plaintiff can ultimately meet his prima facie burden, these are for resolution at a later time. Plaintiff has done enough to give Marque "fair notice of [his] claim[s] and the grounds upon which [they] rest[ ]." *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019) (citations omitted). Accordingly, Plaintiff's Title VII discrimination claim will be allowed to proceed.

Plaintiff has not, however, stated a colorable Title VII hostile work environment claim. The only specific hostile incident regarding race alleged in the Complaint is that Warner called Plaintiff "boy" on one occasion.[2] While the Supreme Court has ruled that use of the term "boy" towards an African-American man is offensive for purposes of Title VII, *see Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 454 (2006) (per curiam), a hostile work environment claim must still allege discriminatory intimidation so severe or pervasive that it altered the very conditions of a plaintiff's employment. *See Bailey v. USF Holland, Inc.*, 526 F.3d 880, 886 (6th Cir. 2008) (affirming finding of hostile work environment based, in part, on evidence that plaintiffs were subjected to numerous "objectively hostile" incidents involving the word "boy" over the course of years). Offhand remarks or isolated incidents, even if crude or severe, are alone insufficient to create a hostile work environment under Title VII. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (collecting cases); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted) (noting that Title VII is not "a general civility code"). It is beyond cavil that use of the term "boy" in the alleged manner is unacceptable in a civil society. However, because Plaintiff has not alleged the necessary *pervasive* conditions, his Title VII hostile work environment claim must be dismissed.

Plaintiff also has not stated a colorable ADEA discrimination claim. The Complaint merely recites the basic elements of an ADEA claim and is not, as required by the Sixth Circuit, sufficiently supported by factual allegations. Specifically, the Complaint alleges only that Plaintiff

---

[2] The Complaint alleges two other specific incidents: Gottlied telling Plaintiff about an incident on the floor with a terminated black employee and Hilliard slamming his hand on a table. The Complaint does not allege the former incident was hostile, and it does not allege the latter incident involved race. (See Doc. No. 1.) The Complaint's vague reference to "other" unreported incidents cannot be the source of a colorable claim. *See Twombly*, 550 U.S. at 555.

7

was terminated and replaced with someone under the age of 40.[3] Plaintiff fails to plead any specific information regarding the name or qualifications of that individual, or to make any allegations concerning how or why that individual was treated more favorably. Because Plaintiff makes no specific allegations concerning "the other employee or [his or her] differing treatment," the Court "cannot infer that [Marque] fired [Plaintiff] because of [his] age." *Smith*, 749 F. App'x at 448 (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)); *see also House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015) (dismissing age discrimination claims as insufficient because the plaintiff failed to plead any "facts regarding the names, relative ages, or qualifications" of the younger employees who allegedly assumed his job duties or "provide examples of how those employees were treated more favorably"). Accordingly, Plaintiff's ADEA discrimination claim will be dismissed for falling short of the plausibility threshold.

   2. State Law Claims

Plaintiff also brings two state law claims against Marque. First, Plaintiff brings a claim for retaliatory discharge under the Tennessee Public Protection Act ("TPPA"), which is sometimes referred to as Tennessee's "Whistleblower Act." The TPPA provides that no employee "shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities," Tenn. Code Ann. § 50-1-304(b),[4] and it provides a cause of action for "discharge in retaliation for refusing to remain silent about illegal activities." *Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015); *Sykes v. Chattanooga Hous. Auth.*, 343 S.W. 3d 18, 27 (Tenn. 2011). The TPPA defines "illegal activities" as "activities that are in violation of the criminal or civil code

---

[3] The Complaint generally alleges the ages of various Marque supervisors and employees, but it does not allege any other adverse employment actions based upon age.

[4] Plaintiff cites Tenn. Code Ann. § 50-1-801, but this is merely the provision of the TPPA that addresses the burden of proof.

of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3). The Tennessee Supreme Court has construed the TPPA to include an "important public policy" requirement. *Knisley v. CEC Ent., Inc.*, No. 3:19-CV-00495, 2019 WL 10949409, at *4 (M.D. Tenn. Oct. 23, 2019). Under this requirement, a plaintiff's "whistleblowing activity" must "seek to further the public good," rather than being "merely private or proprietary." *Id.* (quoting *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 n.4 (Tenn. 2002)).

Here, although Plaintiff alleges that he was discharged as a result of discrimination, he does not allege that he first "resisted or refused to be silent about an illegal activity that was contrary to an important public policy of the state" in order to "further the public good." Accordingly, Plaintiff fails to allege that he was a whistleblower within the particular meaning of the TPPA. Thus, Plaintiff has not stated a colorable claim for retaliatory discharge under the TPPA. This claim must, therefore, be dismissed.

Second, Plaintiff brings a claim for negligent retention. In Tennessee, a plaintiff may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of negligence,[5] that the employer had knowledge of the employee's unfitness for the job. *Prime Health Servs., Inc. v. Capital Bank, N.A.*, No. 3:16-CV-00034, 2017 WL 1064360, at *2 (M.D. Tenn. Mar. 21, 2017) (citing *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)). A plaintiff also must "identify the employee and explain what the employee did that negligently injured the plaintiff," *Thompson v. Bank of Am., N.A.*, 773

---

[5] In Tennessee, the elements of negligence ere "(1) a duty of care owed by the plaintiff to the defendant, (2) conduct by the defendant that breaches this duty, (3) an injury or loss, (4) a cause-in-fact connection between the plaintiff's injury or loss and the defendant's conduct, and (5) the existence of proximate or legal cause. *Eskin v. Bartee*, 262 S.W.3d 727, 735 n.19 (Tenn. 2008) (citing *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn.2005)).

9

F.3d 741, 755 (6th Cir. 2014), and allege that "'the employer had knowledge of the employee's unfitness for the job.'" *Prime Health Servs.,* 2017 WL 1064360, at *2 (quoting *Warren v. Warrior Gold Capital, LLC*, 126 F. Supp. 3d 988, 998 (E.D. Tenn. 2015)).

The Complaint alleges that the actions of Kirkham, Gordin, and Anderson violated Plaintiff's rights and "inflict[ed] stress, anxiety, and adverse employment actions" upon Plaintiff. (Doc. No. 1 at 8.) The Complaint, however, does not allege that these individuals engaged in any negligent actions outside of their positions at Marque. Rather, Plaintiff alleges that, in the context of their employment at Marque, these individuals were disrespectful to Plaintiff and eventually terminated him. Plaintiff therefore fails to allege what duty of care to Plaintiff these individuals purportedly breached. In addition, Plaintiff does not allege that he made any attempt to report these three individuals' unfitness to Marque. Thus, he has not alleged that Marque had "knowledge" of the alleged unfitness. Accordingly, Plaintiff has not stated a colorable negligent supervision or retention claim against Marque. This claim must also be dismissed.

### III. CONCLUSION

For the reasons explained above, the Court concludes that Plaintiff has stated a non-frivolous Title VII discrimination claim against Marque. Plaintiff's remaining claims will be dismissed.

An appropriate order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE